# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

OWNERS INSURANCE COMPANY,

    Plaintiff,

    v.                                                      No. 2:20-CV-56

ENDICOTT BUICK-CADILLAC, INC.
and JAMES BROOMS,

    Defendants.

**ORDER**

Before the Court are cross motions for summary judgment: the motion for summary judgment filed by Defendant Endicott Buick-Cadillac, Incorporated ("Endicott"), dkt. no. 29; and the motion for summary judgment filed by Plaintiff Owners Insurance Company ("Plaintiff"), dkt. no. 31. For the reasons stated below, Endicott's motion is **DENIED**, and Plaintiff's motion is **GRANTED**.

**BACKGROUND**

This is a declaratory judgment action seeking a determination of Plaintiff's liability to Defendants in an underlying state court personal injury suit. On October 24, 2017, Defendant James Brooms ("Brooms") was performing work on the roof of a property located at 2304 Glynn Avenue in Brunswick, Georgia. Dkt. No. 31-2 at 1, 2. Brooms alleges that while on the roof, he stepped onto an

unguarded or unsafe skylight and fell to the concrete floor twenty-five to thirty feet below, which resulted in traumatic and permanent psychological and physical injuries.  Id. at 2. Defendant Endicott was the owner of this property, and non-party GEM Car Sales and Service ("GEM") was Endicott's tenant at the time of Brooms's accident.  Id. at 1.  GEM, the tenant, had secured liability insurance through Plaintiff for a period of January 30, 2017 to January 30, 2018,[1] and Endicott, the landlord, was named as an additional insured on the policy.  Id.; Dkt. No. 29-5 at 1.

On September 30, 2019, Brooms filed a negligence suit against Endicott, among others, in the Superior Court of Glynn County. Dkt. No. 1-1 at 2, 6-8.  Endicott learned of Brooms's lawsuit when Endicott was served on October 23, 2019; however, Endicott had knowledge of Brooms's accident a few days after it occurred in October 2017.  Dkt. No. 29-5 at 4; Dkt. No. 31-2 at 3.  Plaintiff was first made aware of Brooms's lawsuit and the subject incident on November 19, 2019, and on November 21, 2019, Plaintiff issued a letter to Endicott.  Dkt. No. 32-2 at 3; Dkt. No. 1-2 at 2.  In Plaintiff's letter, written by Claims Representative Joe Gregors, Plaintiff informed Endicott that it had "received a claim concerning [Brooms's] complaint . . . in the Superior Court of Glynn County" and referred Endicott to "the Garage Liability form"

---

[1] Although Plaintiff states the policy was effective through January 30, 2019, dkt. no. 31-2 at 4, this seems to be a typo; the policy reflects an end date of 2018.  See Dkt. No. 1-4 at 2; Dkt. No. 29-5 at 1; Dkt. No. 35 at 2.

and the "Garage Liability Plus Endorsement" contained in the policy. Dkt. No. 1-2 at 2-6. Plaintiff quotes portions of the policy for over three pages of this five-page letter. See id. Plaintiff then wrote:

> This incident occurred on October 24, 2017; however, we did not receive notification until November 19, 2019. Our insured's policy requires that we be notified of an occurrence that may result in a claim as soon as practicable. Additionally, our insured's policy contains exclusions for benefits to injured persons who may be covered under a workers compensation or disability benefit law or a similar law. We have assigned attorney Steve Sims to defend you subject to this reservation of rights. Please contact Mr. Sims at (912) 754-4280 upon receipt of this letter to discuss this matter in detail.
>
> All rights, terms, condition [sic], and exclusions in our insured's policy are in full force and effect and are completely reserved. No action by any employee, agent, attorney or other person on behalf of Owners Insurance Company; or hired by Owners Insurance Company on your behalf; shall waive or be construed as having waived any right, term, condition, exclusion or any other provision of the policy.

Id. at 6. The attorney Plaintiff assigned to defend Endicott, Stephen Sims, filed his Entry of Appearance and Substitution of Counsel on behalf of Endicott in the state court suit on December 9, 2019. Dkt. No. 29-5 at 2. Plaintiff, again via Claims Representative Joe Gregors, wrote another letter (the "second letter") to Endicott on December 18, 2019, in which Plaintiff notified Endicott that "[t]he amount of damages claims in the [state court] suit may be in excess of the protection afforded under [the] . . . policy," and that if the verdict or judgment

exceeds that policy limit, Endicott "will be personally liable for such excess." Id.; Dkt. No. 29-4 at 23.

On June 6, 2020, after providing Mr. Sims to defend Endicott in the state court suit for about six months, Plaintiff filed the present declaratory judgment action against Endicott and Brooms. Dkt. No. 29-5 at 3; Dkt. No. 1.  In this action, Plaintiff seeks a declaratory judgment that it has no duty to defend or indemnify Endicott against the state court suit. Dkt. No. 1 at 12.  Plaintiff argues that neither Endicott nor Brooms is afforded coverage under the policy because the policy requires Endicott to notify Plaintiff "as soon as practicable of an 'occurrence' which may result in a claim" and Endicott failed to do so, thereby breaching the conditions precedent to the policy. Id. at 11.  Endicott filed a timely answer, dkt. no. 13; Brooms, however, filed nothing after his waiver of service of summons on October 23, 2020, dkt. no. 24.

On January 21, 2021, Endicott filed a motion for summary judgment, arguing Plaintiff failed to effectively reserve its rights and is therefore estopped from denying coverage. Dkt. No. 29-1 at 7.  Plaintiff filed a cross motion for summary judgment on January 29, 2021, in which it argues Endicott's delay in giving Plaintiff notice of the Brooms incident constitutes a breach of a condition precedent to Plaintiff's defending or indemnifying Endicott. Dkt. No. 31-1 at 12-13.  The Court held oral argument on the motions on July 19, 2021. Dkt. No. 50.  The motions have

been fully briefed, dkt. nos. 34, 36, 41, 42, and are now ripe for review.[2]

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson, 477 U.S. at 248). Factual disputes that are "irrelevant or unnecessary" are insufficient to survive summary judgment. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp.

---

[2] On April 14, 2021, Plaintiff filed a notice with the Court, dkt. no. 45, in which Plaintiff advised the Court that Brooms had voluntarily dismissed without prejudice his state court suit against Endicott on April 13, 2021. The parties do not contend, nor does the Court believe, that the Court is thereby deprived of jurisdiction to hear this dispute. See, e.g., Allstate Ins. Co. v. Employers Liab. Assur. Corp., 445 F.2d 1278, 1281 (5th Cir. 1971) (finding judgment in underlying case did not render declaratory judgment action between insurers moot where parties "unambiguous[ly] agree[d] with each other . . . to reserve and not to forego a later adversary determination of their respective rights and liabilities"); Edwards v. Sharkey, 747 F.2d 684, 685-86 (11th Cir. 1984) (finding declaratory judgment action to determine relative liabilities of insurers was not mooted where underlying tort action was settled). The Court therefore proceeds to discuss the case on its merits.

v. Catrett, 477 U.S. 317, 323 (1986).  The movant must show the court that there is an absence of evidence to support the nonmoving party's case.  See id. at 325.  If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist.  See Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence."  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)).  Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency."  Id. at 1117.  Where the nonmovant attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

**DISCUSSION**

## A. Endicott's Motion for Summary Judgment

In its motion for summary judgment, dkt. no. 29, Endicott asserts that Plaintiff failed to effectively reserve its rights and is therefore estopped from denying coverage in the state court suit.  Dkt. No. 29-1 at 3.  Endicott argues Plaintiff's first "purported reservation of rights" letter dated November 21, 2019 is ambiguous and "makes no mention that notwithstanding [Plaintiff's] defense of the action, it disclaims liability and does not waive the defenses available to it against the insured." Id. at 5 (emphases removed).  Endicott also contends Plaintiff's second letter dated December 18, 2019 "specifically state[d] that the case [wa]s being defended on behalf of Endicott without mentioning any reservation of rights."  Id. at 6 (emphasis removed).  Endicott argues that, based on these two letters, it "believed [Plaintiff] was going to defend the case on its behalf and indemnify it for any damages, up to the policy limits."  Id.

Plaintiff, however, argues the language contained in its November 21, 2019 letter was "unambiguous," "fairly informed [Endicott] of the notice issue," and is "subject to only one interpretation: the notice defense [wa]s reserved."  Dkt. No. 34 at 8-9.  Plaintiff also argues Endicott "accepted the defense provided by [Plaintiff] in the Underlying Lawsuit subject to the conditions outlined in the reservation of rights letter"; Endicott

7

failed to object to the reservation of rights; and Endicott is therefore precluded from asserting an affirmative defense of estoppel.  Id. at 10–11.  Finally, Plaintiff contends Endicott's reliance on the December 18, 2019 letter is a red herring; Plaintiff argues the second letter was subject to Plaintiff's earlier reservation of rights "and did not amend or alter it in any way."  Id. at 11–12.

> The Georgia Supreme Court has made it clear that:
>
> Under Georgia law, where an insurer is faced with a decision regarding how to handle a claim of coverage at the same time a lawsuit is pending against its insured, the insurer has three options. First, the insurer can defend the claim, thereby waiving its policy defenses and claims of non-coverage. . . . Second, the insurer can deny coverage and refuse to defend, leaving policy defenses open for future litigation. . . . Or, third, the insurer can defend under a reservation of rights.

Hoover v. Maxum Indem. Co., 730 S.E.2d 413, 416 (Ga. 2012) (citations omitted).  "A reservation of rights is a term of art in insurance vernacular and is designed to allow an insurer to provide a defense to its insured while still preserving the option of litigating and ultimately denying coverage."  Id. (citing Nat'l Union Fire Ins. Co. v. Am. Motorists Ins. Co., 504 S.E.2d 673 (Ga. 1998)).  "At a minimum, the reservation of rights must fairly inform the insured that, notwithstanding [the insurer's] defense of the action, it disclaims liability and does not waive the defenses available to it against the insured."  Id. (quoting World Harvest Church, Inc. v. Guideone Mut. Ins. Co., 695 S.E.2d 6 (Ga.

2010)) (emphasis removed).  "The reservation of rights should also inform the insured of the specific 'basis for [the insurer's] reservations about coverage.'"  World Harvest, 695 S.E.2d at 10 (quoting Jacore Sys., Inc. v. Cent. Mut. Ins. Co., 390 S.E.2d 876, 878 (Ga. Ct. App. 1990)).  "In order to inform an insured of the insurer's position regarding its defenses, a reservation of rights must be unambiguous."  Hoover, 730 S.E.2d at 417 (citing World Harvest, 695 S.E.2d at 10).  "[I]f it is ambiguous, 'the purported reservation of rights must be construed strictly against the insurer and liberally in favor of the insured.'"  World Harvest, 695 S.E.2d at 10 (quoting Canal Ins. Co. v. Flores, 524 F. Supp. 2d 828, 834 (W.D. Tex. 2007)).  "A reservation of rights is not valid if it does not fairly inform the insured of the insurer's position."  Hoover, 730 S.E.2d at 417.

Plaintiff's November 21, 2019 letter is sufficient under Georgia law to reserve Plaintiff's rights to later deny coverage. Endicott's qualm with Plaintiff's letter is Plaintiff's failure to specifically state "that, despite its defense of the Underlying lawsuit, [Plaintiff] is disclaiming liability for providing a defense or indemnification to Endicott."  Dkt. No. 29-1 at 5. However, Georgia courts have found that where an insurer's letter states "that [the insurer]'s defense of [the insured] (through the assigned law firm) was under a reservation of right to deny coverage and withdraw the defense," such language constitutes an

9

effective reservation of rights. N. Am. Specialty Ins. Co. v. Bull River Marina, LLC, 709 F. App'x 623, 628 (11th Cir. 2017) (citing Wellons, Inc. v. Lexington Ins. Co., 566 F. App'x 813, 821–22 (11th Cir. 2014)). Even where a reservation of rights letter "quote[s] large portions of the policy," if it also provides "analysis as to why specific provisions and exclusions may apply" and "contain[s] nonwaiver clauses that specifically reserve[] [the insurer]'s right to assert additional coverage defenses," the letter is sufficient to protect the insurer's rights and avoid estoppel. Wellons, 566 F. App'x at 823–24. Plaintiff's letter does both here: it explains why the notice provision may apply to preclude coverage[3] and contains a nonwaiver clause specifically reserving its right to assert additional defenses.[4] Plaintiff's statement to Endicott that it had "assigned attorney Steve Sims to

---

[3] Plaintiff quoted the relevant portions of the policy and then wrote:

> This incident occurred on October 24, 2017; however, we did not receive notification until November 19, 2019. Our insured's policy requires that we be notified of an occurrence that may result in a claim as soon as practicable.

Dkt. No. 1-2 at 6.

[4] Plaintiff ended the letter with this clause:

> All rights, terms, condition [sic], and exclusions in our insured's policy are in full force and effect and are completely reserved. No action by any employee, agent, attorney or other person on behalf of Owners Insurance Company; or hired by Owners Insurance Company on your behalf; shall waive or be construed as having waived any right, term, condition, exclusion or any other provision of the policy.

Id.

defend [Endicott] *subject to this reservation of rights*" is unambiguous in its intention to reserve Plaintiff's rights to later deny coverage on the preceding bases, including, namely, the notice provision.  Dkt. No. 1-2 at 6; see also, e.g., N. Am. Specialty Ins. Co., 709 F. App'x at 628 (finding the following language along with a waiver clause to be a sufficient reservation of rights: "we need to undertake an in depth review of the policy to determine if coverage is triggered under these circumstances . . . . In the interim, we have assigned [a law firm to] provid[e] a defense of this action under a complete Reservation of Rights, including the right to withdraw from the defense should it be determined no coverage is afforded").

Plaintiff is also correct in that the second letter dated December 18, 2019 "did not amend or alter" Plaintiff's reservation of rights.  Dkt. No. 34 at 11–12.  Endicott does not cite any authority for its argument that a subsequent letter simply discussing an insurer's defense of an insured can retract or alter a prior and valid reservation of rights.  See Dkt. No. 29-1 at 5–7; Dkt. No. 41 at 3.  Without explicitly altering or rescinding its prior reservation of rights, Plaintiff's December 18, 2019 letter does nothing to invalidate its prior reservation; the second letter is, at best, ambiguous, and therefore does not affect Plaintiff's reservation of rights.  Cf., e.g., Latex Constr. Co. v. Everest Nat'l Ins. Co., 11 F. Supp. 3d 1193, 1205 (N.D. Ga.

2014) ("[Insurer] sent a coverage position letter, *explicitly amending* its [earlier] reservation of rights letter, informing [the insured] that [the insurer] had 'concluded that coverage does not exist under the . . . Policy' and denying [the insured]'s request for coverage." (emphasis added)).

Because Plaintiff's November 21, 2019 letter properly reserved its rights to later dispute coverage, and the December 18, 2019 letter did not alter or amend Plaintiff's earlier reservation of rights, Endicott's motion for summary judgment arguing the contrary must be **DENIED.**

### B. Plaintiff's Motion for Summary Judgment

In its cross motion for summary judgment, dkt. no. 31, Plaintiff argues Endicott "breached the terms of the Policy by failing to notify [Plaintiff] 'as soon as practical of an occurrence or an offense which may result in a claim'"; this "notice provision is a condition precedent"; and Endicott's failure to comply with a condition precedent "mandates that [Plaintiff] ha[d] no duty to either defend or indemnify [Endicott] in the Underlying Lawsuit." Id. at 8, 9, 13. Plaintiff argues that while "[t]he issue of whether notice is timely . . . is sometimes a question of fact for the jury, . . . a significant, unexcused delay may be unreasonable as a matter of law," which is the case here because Endicott failed to notify Plaintiff of the

Brooms incident until November 19, 2019, over two years after the incident occurred.  Id. at 10–12.

Endicott did not specifically respond to any of Plaintiff's arguments regarding Endicott's breach of the policy.  Endicott instead restated the argument in its own motion for summary judgment, namely, that Plaintiff failed to effectively reserve its rights and is therefore estopped from denying coverage.  Compare Dkt. No. 29-1 with Dkt. No. 38.  Plaintiff points out that Endicott "does not dispute . . . that the delay in notice, as a matter of law, is unreasonable."  Dkt. No. 42 at 2.

Here, the policy states in relevant part: "You must see to it that we are notified as soon as practical of an occurrence or an offense which may result in a claim."  Dkt. No. 1-4 at 47.  The policy also contains the following clause: "No person or organization has a right under this policy . . . [t]o join us as a party or otherwise bring us into a suit asking for damages from an insured[] or . . . [t]o sue us on this policy unless all of its terms have been fully complied with."  Id. at 48.

Under Georgia law, "[t]he purpose of a notice provision in a policy of insurance is to allow the insurer to investigate promptly the facts surrounding the occurrence and to prepare a defense or determine whether a settlement is feasible, while the facts are still fresh and the witnesses are still available."  Hyde v. State Farm Mut. Auto. Ins. Co., 848 S.E.2d 145, 148 (Ga. Ct. App. 2020)

(quoting <u>Plantation Pipeline Co. v. Royal Indem. Co.</u>, 537 S.E.2d 165, 169 (Ga. Ct. App. 2000)).  "[T]he issue of whether notice is timely and meets the policy provisions is usually a question of fact for the jury. Unexcused significant delay, however, may be unreasonable as a matter of law." <u>Id.</u> (quoting <u>Advoc. Networks, LLC v. Hartford Fire Ins. Co.</u>, 674 S.E.2d 617, 619 (Ga. Ct. App. 2009)).  Georgia courts have found periods of delay—shorter than the one here—to be unreasonable as a matter of law. <u>See, e.g.</u>, <u>Advoc. Networks</u>, 674 S.E.2d at 619 (with no reasonable explanation for four-month delay, insurer "ha[d] no duty under the policies to defend or indemnify" insurer); <u>Hyde</u>, 848 S.E.2d at 149 (insured's "22-month delay in notifying" insurer "was unexcused and unreasonable as a matter of law").

Here, Endicott does not dispute that it failed to give Plaintiff notice in a timely manner, nor does it dispute that timely notice was a condition precedent to Plaintiff's defense and indemnification of Endicott.  In fact, Endicott admits that it did <i>not</i> notify Plaintiff "as soon as practical" of the Brooms incident. <u>See</u> Dkt. No. 49 at 6.  Under Georgia law, Endicott's unexplained failure to notify Plaintiff of the Brooms incident until over two years after the incident is unreasonable as a matter of law, and Plaintiff therefore had no duty to defend or indemnify Endicott in the state court action.  Accordingly, Plaintiff's motion for summary judgment, dkt. no. 31, must be **GRANTED**.

14

**CONCLUSION**

For the reasons stated above, Endicott's Motion for Summary Judgment, dkt. no. 29, is **DENIED**, and Plaintiff's Motion for Summary Judgment, dkt. no. 31, is **GRANTED**.  The Clerk is **DIRECTED** to enter judgment for Plaintiff and **CLOSE** this case.

**SO ORDERED**, this 9th day of August, 2021.

_____

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA